UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Bankruptcy No. 10 B 16683 |
| | ) | Chapter 13 |
| MICHAEL W. EVON and | ) | Judge Donald R. Cassling |
| THERESA C. EVON, | ) | |
| | ) | |
| Debtors. | ) | |

**MEMORANDUM OPINION**

Debtors Michael W. and Theresa C. Evon seek a declaration that their Chapter 13 plan has been paid in full, even though their median income placed them in the "five-year-plan" category of 11 U.S.C. § 1325(b)(1)(B) and (b)(4)(A)(ii)(II) and less than three years have passed since their plan was confirmed. Glenn Stearns, the Standing Chapter 13 Trustee, objects and asks the Court to find that the Debtors will not have completed their plan until the earlier of five years from the date of confirmation or payment in full of their creditors. Because the Debtors elected, and complied with, the "early-out" option of the Model Plan, and the Trustee had recommended confirmation of the plan with that option, the Court finds that the Debtors have completed their plan and grants their motion.

**I. JURSIDICTION AND PROCEDURE**

The Court has jurisdiction to entertain this matter pursuant to 28 U.S.C. § 1334 and Internal Operating Procedure 15(a) of the United States District Court for the Northern District of Illinois. It is a core proceeding under 28 U.S.C. § 157(b)(2)(A) and (O).

## II. BACKGROUND

Prior to the filing of the bankruptcy petition, Debtor Michael W. Evon owned Cel-Pak, Inc., an Illinois S-Corporation. In 2007 Cel-Pak incurred a net operating loss of $159,586 (the "NOL"), against which the Debtors could offset future taxable income.[1]

On April 15, 2010, the Debtors filed a voluntary Chapter 7 bankruptcy petition and then converted their case to Chapter 13 on July 2, 2010. At the first meeting of creditors, the Trustee asked that any future tax refunds generated by the NOL offsets be used to fund the Debtors' plan. The Debtors agreed and estimated in their draft plan that there would be only $20,000 in future tax refunds attributable to the NOL, which would be fully exhausted with the filing of their 2011 income tax return.

Because the Debtors' amended Chapter 13 Statement of Current Monthly Income and Calculation of Commitment Period and Disposable Income indicated that the Debtors were above the median family income,[2] their "applicable commitment period" under a proposed plan was five years for purposes of 11 U.S.C. § 1325(b)(4).[3] The Debtors proposed their plan on September 14, 2010.

Local Bankruptcy Rule 3015–1 provides that for "all cases filed under Chapter 13 of the Bankruptcy Code, the debtor's plan shall conform to the Model Plan adopted by the judges of this court. . . ." The Model Plan was adopted to provide for (1) a clear statement of the rights

---

[1] The Debtors exhausted part of the NOL prior to the bankruptcy case when they filed their 2009 federal income tax return. As of the filing of that return, the NOL available to carry forward to 2010 was $98,642.

[2] Even though the Debtors maintain that they are not above the median family income (Mot. to Approve, ¶ 2), this Form shows otherwise. (Docket No. 46.) Section 1325(b) does not define the phrase "median family income." Rather, it sets forth the method by which that amount is calculated. Section 101(39A) states in part that "median family income" means for any year "the median family income both calculated and reported by the Bureau of the Census in the then most recent year. . . ." 11 U.S.C. § 101(39A)(A).

[3] Section 1325(b)(1)(B) provides that a court may not approve a Chapter 13 plan unless, as of the effective date, "the plan provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B). Section 1325(b)(4) defines the "applicable commitment period" as not less than five years where a debtor's income is above the median family income. 11 U.S.C. § 1325(b)(4)(A)(ii).

2

and responsibilities of all parties affected by the plan; (2) a uniform presentation of the matters dealt with by the plan; (3) an internal check of the feasibility of the plan; (4) the treatment of claims consistent with the provisions of the Bankruptcy Code; and (5) flexibility to change any of the substantive provisions of the plan, with clear notice of such changes. *See In re Swanson*, 312 B.R. 153, 156 (Bankr. N.D. Ill. 2004).

The Model Plan format was also adopted to address the concerns raised by the Seventh Circuit in *Adair v. Sherman*, 230 F.3d 890 (7th Cir. 2000). *Swanson*, 312 B.R. at 156 n.1. According to *Adair*, if an objection is not raised at the confirmation hearing or on appeal from the order of confirmation, the plan cannot be attacked in a subsequent proceeding. 230 F.3d at 894. In light of this ruling, the Model Plan was purposefully drafted to make a confirmed plan more like a contract between a debtor and his creditors by imposing real and measurable obligations upon debtors in exchange for their expected discharge upon completion of the plan.

But the Model Plan also allows debtors some flexibility as to the "contractual" obligations they undertake. For example, Section D.3 of the Model Plan gives debtors the choice between two options to conclude the plan before its stated termination date by "prepaying" the payment amount set forth in Paragraphs 1 and 2 of Section D of the plan:

> Plan Completion. ☐ The plan will conclude before the end of the initial term, as adjusted by Paragraph 2, only at such time as all allowed claims are paid in full, with any interest required by the plan /or/
>
> ☐ The plan will conclude before the end of the initial term at any time that the debtor pays to the trustee the full amounts specified in Paragraphs 1 and 2.

In this case, the Debtors elected the second option, and the Trustee did not object to their election. The Debtors filled out Paragraphs 1 and 2 of Section D of the Model Plan by proposing

3

to pay a total of $50,000 as follows: $500 per month for 60 months plus a $10,000 lump-sum payment in the eighteenth month of the plan and another $10,000 lump-sum payment in the thirtieth month. (Mot. to Approve, Ex. A.) The unambiguous net effect of these provisions was that the Debtors' plan would conclude at the earlier of sixty months or payment of $50,000 to the Trustee.

Section E.8 of the plan further explained that the Debtors proposed to pay creditors holding general unsecured claims 20% of their allowed amount. (*Id.*) Finally, in Section G of the plan, the Debtors agreed to "turn over any income tax refunds received during the plan duration to the Chapter 13 trustee, which debtor[s believe] is approximately $10,000 in month 18 (for 2010) and $10,000 in month 30 (for 2011) due to business losses." (*Id.*) On September 17, 2010, the Trustee recommended that the plan be confirmed, and the Court followed the Trustee's recommendation.

In 2011, the Debtors filed their 2010 income tax return. (Mot. to Approve, ¶ 9.) Applying their NOL resulted in federal and state tax refunds totaling $20,641, which the Debtors used to fund the plan. (*Id.*) In 2012, the Debtors filed their 2011 income tax return, applying the balance of the NOL. (*Id.* at ¶ 10.) Again, the Debtors used the resulting federal and state income tax refunds (totaling $15,830) to fund their plan. (*Id.*)

According to the Debtors, their Schedules listed $233,811.28 in total debt, but the proofs of claim that were timely filed totaled only $96,898.52.[4] (*Id.* at ¶ 14.) Even though the plan provided for only a 20% dividend to unsecured creditors, the larger-than-anticipated tax refunds and the smaller-than-anticipated creditor pool resulted in an approximately 65% distribution to unsecured creditors. (*Id.* at Ex. B.)

---

[4] Because the remaining creditors failed to file timely proofs of claim, they are not entitled to be paid under the plan. *See* 11 U.S.C. § 502(a); Fed. R. Bank. P. 3002 & 3005(a); *In re Jongsma*, 402 B.R. 858, 868 (Bankr. N.D. Ind. 2009) ("In order to have an 'allowed claim,' it is necessary to file a proof of claim.").

By September 2012, the Debtors had satisfied the two key provisions of the plan: They had (a) paid to the Trustee more than the $50,000 base amount specified in Section D.3 and (b) paid general unsecured creditors significantly more than the 20% of their allowed claims provided for in Section E.8. (*Id.*) Despite this, the Trustee informed the Debtors by letter dated September 25, 2012 that, pursuant to an audit, he was adjusting the Debtors' base amount from $50,000 to $66,471, resulting in a balance due under the plan of $15,830. (Reply to Mot. to Approve, Ex. C.) A handwritten notation on the letter stated, "Base subject to change—future tax refunds." (*Id.*)

The Debtors then filed this motion to declare their plan completed. The Debtors argue that, because they have completed payment of the $50,000 base amount under the plan, the Trustee should not be permitted to change the base after the fact.

### III. DISCUSSION

The Trustee argues that the Bankruptcy Code requires the Debtors to make payments for five years regardless of the base amount set forth in the plan.[5] The Debtors argue that the plan provisions control, that they satisfied those provisions when they paid the Trustee the full amount set forth in the plan, $50,000, and that by doing so they exceeded the 20% dividend to unsecured creditors required by Section E.8.

The Debtors acknowledge that as of the filing of this motion, the plan term has run for only twenty-nine months, not the full sixty months set forth in the plan. However, the Trustee

---

[5] The Court acknowledges that there is a split of authority regarding whether an above-median-income Chapter 13 debtor must make plan payments for a five-year term, unless the plan pays unsecured creditors in full over a shorter period of time. *Compare Whaley v. Tennyson (In re Tennyson)*, 611 F.3d 873, 879 (11th Cir. 2010) (holding that above-median-income debtors must make plan payments for a five-year period); *In re Nance*, 371 B.R. 358, 372 (Bankr. S.D. Ill. 2007) (same); *with In re Mathis*, 367 B.R. 629 (Bankr. N.D. Ill. 2007) (stating that above-median-income debtors not required to make plan payments for five years). The Court need not select between those options, however, because of its ruling that the parties are bound by the terms of the confirmed plan which the Debtors proposed and which the Trustee recommended.

5

cannot dispute that the Debtors have paid more than the $50,000 amount set forth in Section D.1 of their confirmed plan.

The Bankruptcy Code provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). A confirmed plan is a contract that binds both the debtor and all creditors. *Ernst & Young LLP v. Baker O'Neal Holdings, Inc.*, 304 F.3d 753, 755 (7th Cir. 2002) ("A confirmed plan of reorganization is in effect a contract between the parties and the terms of the plan describe their rights and obligations."). Thus, once a plan is confirmed, its terms are not subject to collateral attack. *Adair*, 230 F.3d at 894. "[T]he bar to collateral attacks on confirmed plans is no more than *res judicata* principles at work." *In re Commings*, 297 B.R. 701, 709 (Bankr. N.D. Ill. 2003). There must be finality to a confirmation order so it can be relied upon without concern that actions that later actions could be taken to revoke or change the order. *In re Myers*, No. 06-32029, 2008 WL 345527, at *3 (Bankr. S.D. Ill. Feb. 6, 2008).

The plan specifically and unambiguously provides for total payments of $50,000. The plan also provides that any income tax refunds received during the plan duration must be turned over to the Trustee; and that, although the plan is scheduled to run for sixty months, it can conclude before the end of the sixty months if the Debtors pay the entire $50,000 base amount.

As previously stated, once a plan is confirmed, its terms are not subject to attack. This principle applies to the term that the Debtors incorporated into the plan by checking the box in Section D.3 that states, "[t]he plan will conclude before the end of the initial term at any time that the debtor pays to the trustee the full amounts specified in Paragraphs 1 and 2." The Trustee agreed to the inclusion of this term into the plan when he failed to object to the Debtors'

selection of the "early-out" option in Section D.3. Not only did the Trustee not object to confirmation of the plan containing this term, he recommended confirmation. The Court gives great weight to the Trustee's recommendation regarding whether or not to confirm a Chapter 13 plan and relies on the Trustee to review proposed plans and advise whether he believes that the choices made by debtors are consistent with the Bankruptcy Code provisions.

"It is a well-established principle of bankruptcy law that a party with adequate notice of a bankruptcy proceeding cannot ordinarily attack a confirmed plan." *In re Harvey*, 213 F.3d 318, 321 (7th Cir. 2000). "Forcing parties to raise concerns about the meaning of Chapter 13 filings at the original confirmation proceedings does not impose an unreasonable burden on bankruptcy participants. Quite the contrary—it is perfectly reasonable to expect interested creditors to review the terms of a proposed plan and object if the terms are unacceptable, vague, or ambiguous." *Id.* at 322.

The Court rejects the Trustee's argument that Section G of the plan requires the Debtors to turn over any further income tax refunds without limitation. Section G cannot be read in isolation. The Court must also look to Section D, which defines the plan term. While Section G requires the Debtors to turn over "any income tax refunds received during the plan duration," it is Section D.1 that defines that duration. Section D.1 of this confirmed plan provides that the plan may conclude prior to sixty months once the $50,000 sum has been paid. Because the Trustee accepted and recommended the Debtors' choice to conclude the plan term prior to the sixty months, and because the $50,000 payment requirement has been satisfied, the Court finds that the plan is complete.

7

## IV. CONCLUSION

For all of the foregoing reasons, the Court grants the Debtors' motion and finds that the Debtors have completed their plan.

**ENTERED:**

DATE: March 21, 2013

_Donald R. Cassling_
**Donald R. Cassling**
**United States Bankruptcy Judge**